UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| SAM ELSAYED ELSHAZLY, | ) | CASE NO. 19-65454-JWC |
| | ) | |
| Debtor. | ) | JUDGE JEFFERY W. CAVENDER |
| | ) | |

-----------------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| WINSHIP FARMS HOMEOWNERS ASSOCIATION, INC., | ) ) ) | |
| Movant, | ) ) | |
| v. | ) | <u>CONTESTED MATTER</u> |
| SAM ELSAYED ELSHAZLY and WILLIAM J. LAYNG, JR. (as Trustee), | ) ) ) | |
| Respondents. | ) ) | |

**NOTICE OF HEARING**

  PLEASE TAKE NOTICE that Winship Farms Homeowners Association, Inc. ("Movant") has filed a *Motion for Relief from Stay* and related papers with the Court seeking an order stating that the automatic stay pursuant to 11 U.S.C. § 362 shall be modified to permit Movant to enforce all land covenants, including proceeding with foreclosure of Movant's statutory lien by way of initiating or continuing a judicial foreclosure action in the state court system.

  PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the *Motion for Relief from Stay* in Courtroom 1203, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia, 30303 at 10:00 A.M. on November 7, 2019.

  Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you

file a written response, you must attach a certificate stating when, how, and on whom (including addresses) you served the response.  Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing.  The address of the Clerk's Office is:

    Clerk, U.S. Bankruptcy Court
    75 Ted Turner Drive, Suite 1340
    Atlanta, GA  30303

You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion for Relief from the Automatic Stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty (30) days of filing the Motion and agrees to a hearing on the earliest possible date.  Movant consents to the Automatic Stay remaining in effect until the Court orders otherwise.

    Respectfully submitted, this 2nd day of October, 2019.

                              LUEDER, LARKIN & HUNTER, LLC

                By:     /s/ Daniel E. Melchi
                            Daniel E. Melchi
                            Georgia Bar No. 501187
                            Attorneys for the Movant

5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005
T:  (770) 685-7000
F:  (770) 685-7002
E:  dmelchi@luederlaw.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| SAM ELSAYED ELSHAZLY, | ) | CASE NO. 19-65454-JWC |
| | ) | |
| Debtor. | ) | JUDGE JEFFERY W. CAVENDER |
| | ) | |
| ----------------------------- | | |
| | ) | |
| WINSHIP FARMS HOMEOWNERS ASSOCIATION, INC., | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| SAM ELSAYED ELSHAZLY and WILLIAM J. LAYNG, JR. (as Trustee), | ) | |
| | ) | |
| Respondents. | ) | |

**MOTION FOR RELIEF FROM STAY**

COMES NOW, Winship Farms Homeowners Association, Inc. ("Movant"), by and through counsel, Lueder, Larkin & Hunter, LLC, and files this *Motion for Relief from Stay* seeking to have the stay of 11 U.S.C. § 362(a) lifted, modified, or terminated, stating as follows:

1.

On September 28, 2019, Debtor filed a Chapter 7 bankruptcy petition in this Court, creating the instant case herein.

2.

Debtor was, at the time of the Chapter 7 petition, and is now the owner of real property in Winship Farms community, the address being 4342 White Surrey Drive, Kennesaw, Georgia, 30144 ("Property").

3.

As the owner of the Property, the Debtor is subject to all terms, conditions, and requirements of the duly recorded *Declaration of Covenants, Conditions, Restrictions and Easements for Winship Farms Subdivision* ("Declaration") and the Georgia Property Owners' Association Act ("Act").  (Exhibit "A" and O.C.G.A. § 44-3-232(a)).

4.

Pursuant to the Declaration and the Act, Debtor is required to pay to Movant assessments as Debtor's share of the common expenses of maintenance of the Property and the operation of Movant, a non-profit corporation.  *Id.*

5.

Movant has a statutory lien on the Property due to non-payment of assessments totaling $7,821.10 as of October 2, 2019.  (Exhibit "B").  Debtor's sworn Schedule A/B values Debtor's interest in the Property at $248,000.  Debtor's sworn Schedule D lists the following secured creditors whose claim are secured by the Property:

1. Mr. Cooper (mortgage):  $285,000
2. Movant:  (Whose claim is actually $15,530.66, greater than the amount listed in Section 2.3 of Schedule D)
A. Total Liens on Property, according to Debtor's sworn Schedules and corrected lien amount provided by Movant on Movant's lien:  $300,530.66

B. Total share of Debtor's equity interest in the Property, per Debtor's sworn Schedules and corrected lien amount provided by Movant on Movant's lien:  <$52,530.66>

Debtor asserts that there is no equity in the Property, according to Debtor's sworn Schedules A/B and D.  The Property is not a benefit to the bankruptcy estate.  This case is a Chapter 7 liquidation case, not a Chapter 11, Chapter 12, or Chapter 13 reorganization case.  Consequently, cause exists pursuant to 11 U.S.C. § 362(d)(2) for the stay to be modified to allow Movant to exercise Movant's rights under state law to foreclose the statutory lien on the Property.

WHEREFORE, Movant moves that this Honorable Court ORDER:

(a) that the automatic stay pursuant to 11 U.S.C. § 362(a) be LIFTED, MODIFIED, or TERMINATED pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2) to permit Movant to enforce all land covenants related to the Property, including proceeding with foreclosure of Movant's statutory lien by way of initiating or continuing a judicial foreclosure action in the state court system; and

(b) that the stay of F.R.B.P. 4001(a)(3) be WAIVED; and

(c) that any such further relief as the Court may deem just and proper be GRANTED.

Respectfully submitted, this 2nd day of October, 2019.

        LUEDER, LARKIN & HUNTER, LLC

By:   __/s/ Daniel E. Melchi_____
       Daniel E. Melchi
       Georgia Bar No. 501187
       Attorneys for the Movant

5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005
T: (770) 685-7000
F: (770) 685-7002
E: dmelchi@luederlaw.com

**EXHIBIT "A"**

### DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND EASEMENTS FOR WINSHIP FARMS SUBDIVISION

THIS DECLARATION, made this 25th day of February, 1985, by GEORGIA ASSOCIATED SERVICES, INC., a Georgia corporation (hereinafter the "Developer").

### W I T N E S S E T H:

WHEREAS, Developer is the owner of certain real property lying and being in Land Lot 56 of the 20th District, 2nd Section, Cobb County, Georgia, which real property is more particularly described in Exhibit "A" attached hereto and by reference made a part hereof and is generally known as Winship Farms Subdivision; and

WHEREAS, Developer desires to provide for the preservation and enhancement of the property values in Winship Farms and for the maintenance of property and improvements thereon, and to this end desires to subject the residential real property described in Exhibit "A" to the covenants, conditions, restrictions, easements, charges and liens hereinafter set forth, each and all of which are for the benefit of said property and each owner thereof; and

WHEREAS, Developer has deemed it desirable, for the efficient preservation of the values in Winship Farms, to create an agency to which should be delegated and assigned the powers of owning, maintaining and administering the common area and improvements thereon and administering and enforcing the covenants and restrictions and collecting and disbursing the assessments and charges hereinafter created; and

WHEREAS, Developer will cause to be incorporated under the laws of the State of Georgia the Winship Farms Homeowners Association, Inc., a non-profit corporation, for the purpose of exercising the aforesaid functions.

25

any Owner, or the holder of any mortgage, irrespective of when executed, given by Developer.

(c) the right of the Association to dedicate or transfer all or any part of the Common Area to any public agency, authority or utility for such purposes and subject to such conditions as may be agreed to by the members. No such dedication or transfer shall be effective unless an instrument signed by two-thirds (2/3) of each class of members, agreeing to such dedication or transfer, has been recorded.

(d) the easements reserved in Article VII of this Declaration.

Section 2. <u>Declaration of Use</u>. Any Owner may delegate, in accordance with the By-laws, his right of use and enjoyment in and to the Common Area and the improvements thereon to the members of his family, his tenants, guests and invitees, subject to such regulations and fees as may be established from time to time by the Association.

Section 3. <u>Title to Common Area</u>. Title to the Common Area will be conveyed to the Association by the Developer after all lots placed for sale by the Developer have been sold or at such earlier time as the Developer may elect, and only at such time shall the Association have the right to control said property subject to the terms herein.

Section 4. <u>No Partition</u>. There shall be no judicial partition of the Property or any part thereof, nor shall any Person acquiring any interest in the Property or any part thereof seek any such judicial partition unless the Property has been removed from the provisions of this Declaration.

ARTICLE V

**COVENANT FOR MAINTENANCE AND CAPITAL IMPROVEMENT ASSESSMENTS**

Section 1. <u>Creation of the Lien and Personal Obligation of Assessments</u>. Each Owner of a Lot, by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association: (1) annual assessments, and (2) special assessments for capital improvements, such assessments to be established and collect as

- 6 -

3442

hereinafter provided. The annual and special assessments, together with interest thereon and costs of collection thereof, as hereinafter provided, including reasonable attorneys fees, shall be a charge and a continuing lien upon the Lot against which each such assessment is made. Each such assessment, together with interest thereon and costs of collection thereof, including reasonable attorney's fees, shall also be the personal obligation of the person who was the Owner of such Lot at the time when assessment fell due. The personal obligation for delinquent assessments shall not pass to his successors in title unless expressly assumed by them.

Section 2. <u>Purpose of Assessments</u>. The assessments levied by the Association shall be used exclusively for promoting the health, safety, pleasure and welfare of the Owners of the Lots and the costs and expenses incident to the operation of the Association, including without limitation the maintenance and repair of the Common Area and improvements thereon, the maintenance of services furnished by the Association, the purchase of insurance by the Association, the repair and replacement of improvements on the Common Area, payment of all taxes, insurance premiums and all costs and expenses incidental to the operation and administration of the Association, and establishment and maintenance of a reasonable reserve fund or funds.

Section 3. <u>Computation of Annual Assessments</u>. It shall be the duty of the Board at least thirty (30) days prior to the Association's annual meeting to prepare a budget covering the estimated Common Expenses of operating the Association for the coming year, such budget to include a capital contribution or reserve account in accordance with the capital needs of the Association. The budget and the proposed annual assessments to be levied against each Lot shall be delivered to each Owner no later than ten (10) days prior to such annual meeting. The annual assessments shall be equally divided among the Lots so

- 7 -

that the annual assessments shall be the same for each Lot. The budget and the annual assessments shall become effective unless disapproved at the annual meeting by either (i) Developer, so long as there is a Class B member, or (ii) a vote of a majority of the Owners voting in person or by proxy at such meeting on the date when there is no longer a Class B member. In the event the proposed budget is not approved or the Board fails for any reason to determine the budget for the succeeding year, then until a budget has been determined as provided herein, the budget and annual assessments in effect for the then current year shall continue for the succeeding year. If any budget at any time proves inadequate for any reason, the Board may call a meeting of the Association for the approval of a special assessment.

Section 4. *Special Assessments*. In addition to the annual assessments authorized above, the Association may levy, in any assessment year, special assessments for Common Expenses, applicable to that year only, provided that any such assessment shall have the assent of two-thirds (2/3) of the votes of the members of each class voting in person or by proxy at a meeting duly call for such purpose.

Section 5. *Notice for Any Action Authorized Under Sections 3 and 4*. Written notice of any meeting called for the purpose of taking any action authorized under Section 3 or 4 above shall be sent to all members not less than ten (10) days nor more than thirty (30) days in advance of the meeting.

Section 6. *Rate of Assessment*. Annual and special assessments must be fixed at a uniform rate for all Lots.

Section 7. *Date of Commencement of Annual Assessments; Due Dates*. The annual assessments provided for herein shall commence as to all Lots on April 1, 1985. Anything contained herein to the contrary notwithstanding, Developer, on behalf of itself and its successors and assigns, covenants and

- 8 -

3442

agrees to pay the annual assessment for each Lot owned by Developer which contains an occupied residence; provided, however, Developer shall not be responsible for assessments on Lots not containing an occupied residence. Developer shall, however, fund any deficit which may exist between assessments and the annual budget for as long as there is a Class B member of the Association. The due dates shall be established by the Developer until there is no longer a Class B member and then by the Board. The Association shall, upon demand, and for a reasonable charge, not to exceed Ten Dollars ($10.00), furnish a certificate signed by an officer of the Association setting forth whether the assessments on a specified Lot have been paid. A properly executed certificate of the Association as to the status of assessments on a specified Lot is binding upon the Association as of the date of its issuance. If the Association fails to respond to any such request within ten (10) days after receipt of such request, any lien then outstanding shall be deemed to have been extinguished. All such requests shall be sent to the Association in the same manner as provided for notices in Section 6 hereof.

Section 8. <u>Effect of Nonpayment of Assessments; Remedies of the Association</u>. Any assessments which are not paid when due shall be delinquent. If the assessment is not paid within thirty (30) days after the due date, the assessment shall bear interest from the date of delinquency at the maximum legal rate per annum. In such case, the Association may accelerate, at its option, the entire unpaid balance of the assessment and may bring an action at law against the Owner personally obligated to pay the same, or foreclose the lien against such Owner's Lot, and interest, costs and reasonable attorney's fees of any such action shall be added to the amount of such assessment. Each such Owner, by his acceptance of a deed to a Lot, hereby expressly vests in the Association, or its agents, the right and power to bring all actions against such Owner

- 9 -

personally for the collection of such charges as a debt and to enforce the aforesaid lien by all methods available for the enforcement of liens against real property. The lien provided for in this Section shall be in favor of the Association and shall be for the benefit of all other Owners. The Association, acting on behalf of the Owners, shall have the power to purchase any lot at any sale and convey the same for the purpose of protecting its lien. No owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the Common Area, abandonment of his Lot or by renunciation of membership in the Association. An Owner may give to the Association, nevertheless, subject to acceptance thereof by the Association, a deed in lieu of action on lien.

Section 9. <u>Subordination of the Lien to First Mortgages</u>. The lien of the assessments provided for herein shall be subordinate to the lien of any first mortgage, first purchase money security deed or security deed representing a first lien on said property. Sale or transfer of any Lot shall not affect the assessment lien. However, the sale or transfer of any Lot pursuant to foreclosure or any proceeding in lieu thereof shall extinguish the lien of such assessments as to payments which became due prior to such sale or transfer. No sale or transfer shall relieve such Lot from liability for any assessments thereafter becoming due or from the lien thereof.

Section 10. <u>Exempt Property</u>. The following property subject to this Declaration shall be exempted from the assessments, charges and liens created herein: (a) all properties to the extent of any easement or other interest therein dedicated and accepted by the local public authority and devoted to public use; (b) all Common Area; (c) all properties exempted from taxation by state or local governments upon the terms and to the extent of such legal exemption. Notwithstanding any provisions

- 10 -

34

3442

herein, no land or improvements devoted to dwelling use shall be exempt from said assessments, charges or liens.

### ARTICLE VI
### MAINTENANCE

Section 1. <u>Association's Responsibility</u>. Except as otherwise provided for herein, the Association shall maintain and keep in good repair all portions of the Common Area and improvements thereon. The Association's responsibility with respect to the Common Area shall be deemed to include the maintenance, repair and replacement of (i) all roads, driveways, walks, parking areas and buildings and other improvements situated within the Common Area, (ii) such utility lines, pipes, plumbing, wires, conduits and systems which are a part of the Common Area, and (iii) all lawns, trees, shrubs, hedges, grass and other landscaping situated within or upon the Common Area.

### ARTICLE VII
### EASEMENTS

Section 1. <u>Utility Easements</u>. There is hereby created in favor of the Association an easement upon, across, over, through and under all of the Common Area for ingress, egress, installation, replacement, repair and maintenance of all utility and service lines and systems, including but not limited to water, sewers, gas, telephones, electricity, television cable or communication lines and systems. An easement is further granted to the Association, its officers, agents, employees and any management company retained by the Association, to enter in or to cross over the Common Area and the Lots, to inspect and to perform the duties of maintenance and repair of the Common Area and the Lots, as provided herein. Notwithstanding anything to the contrary contained in this Section, no sewers, electrical lines, water lines or other utilities may be installed or relocated on the Property except as initially programmed and approved by the Developer or thereafter approved by Developer or

- 11 -

35

# EXHIBIT "B"

Date:  October 2, 2019 6:52 PM
Matter Reference: Elshazly, Elsayed M.: Bankruptcy Ch. 7 (filed:  09-28-19)
Property Address: 4342 White Surrey Drive, Kennesaw, Georgia 30144
Matter Number: 672-901-5

### October 23, 2018 Judgment

| Date | Assessments through 12/31/18 | Misc. Charges | Attorney Fees | Costs | Late Fees | Fines | Payment | Interest | Adjustment Credits | Judgment Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| October 23, 2018 | $4,574.50 | $0.00 | $5,541.75 | $1,277.98 | $0.00 | $0.00 | $0.00 | $360.85 | $0.00 | $11,755.08 |
| August 6, 2019 | --- | --- | --- | --- | --- | --- | $301.13 | $359.69 | --- | $11,813.64 |
| September 28, 2019 | --- | --- | --- | --- | --- | --- | --- | $66.42 | --- | $11,880.07 |

### Amounts owed since November 26, 2018

| Date | Assessment | Misc. Charges | Attorney Fees | Costs | Late Fee | Fine | Payment | Interest | Adjustment Credits | Running Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| November 26, 2018 | --- | --- | --- | $102.00 | --- | --- | --- | $0.00 | --- | $102.00 |
| May 1, 2019 | $775.00 | --- | --- | --- | --- | --- | --- | $6.37 | --- | $883.37 |
| May 31, 2019 | --- | --- | --- | --- | $77.50 | --- | --- | $25.05 | --- | $985.92 |
| September 26, 2019 | --- | --- | $877.00 | $478.54 | --- | --- | --- | $0.42 | --- | $2,341.89 |
| September 28, 2019 | --- | --- | --- | --- | --- | --- | --- | $0.00 | --- | $2,341.89 |
| October 1, 2019 | $200.00 | --- | --- | --- | --- | --- | --- | $0.00 | --- | $2,541.89 |
| October 2, 2019 | --- | --- | $686.00 | $422.70 | --- | --- | --- | $0.00 | --- | $3,650.59 |

### October 23, 2018 Judgment:

| | |
|---|---|
| Principal (including assessments through December 31, 2018): | $4,574.50 |
| Interest awarded in judgment: | $360.85 |
| Attorney's Fees: | $5,541.75 |
| Costs: | $1,277.98 |
| Accrued Post-Judgment Interest through September 28, 2019: | $426.12 |
| Payments: | ($301.13) |
| Judgment Balance | $11,880.07 |

### Amounts owed since November 26, 2018

| | |
|---|---|
| Assessments May 1, 2019 to October 1, 2019: | $975.00 |
| Late Fees: | $77.50 |
| Interest: | $31.85 |
| Attorney's Fees: | $1,563.00 |
| Costs: | $1,003.24 |
| Total: | $3,650.59 |

| **Lien Total:** | **$15,530.66** |
|---|---|

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| SAM ELSAYED ELSHAZLY, | ) | CASE NO. 19-65454-JWC |
| | ) | |
| Debtor. | ) | JUDGE JEFFERY W. CAVENDER |
| | ) | |

-----------------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| WINSHIP FARMS HOMEOWNERS ASSOCIATION, INC., | ) ) ) | |
| Movant, | ) ) | |
| v. | ) | CONTESTED MATTER |
| SAM ELSAYED ELSHAZLY and WILLIAM J. LAYNG, JR. (as Trustee), | ) ) ) | |
| Respondents. | ) ) | |

## CERTIFICATE OF SERVICE

This is to certify that, on this day, the person(s) listed below was/were served a copy of the foregoing *Motion for Relief from Stay* and *Notice of Hearing* by the depositing of a copy of the same in the United States mail, with adequate First Class postage affixed thereon, and addressed as follows:

Sam Elsayed Elshazly
4342 White Surrey Drive, N.W.
Kennesaw, GA  30144

This is to certify that I have, on this day, electronically filed the foregoing *Motion for Relief from Stay* and *Notice of Hearing* using the Bankruptcy Court's Electronic Case Filing program which with sends a notice of this document and an accompanying link to this document to the following person(s) who has/have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

1. Lorena Lee Saedi of Saedi Law Group, LLC
2. William J. Layng, Jr., Chapter 7 Trustee

Respectfully submitted, this 2nd day of October, 2019.

                            LUEDER, LARKIN & HUNTER, LLC

                By:    /s/ Daniel E. Melchi
                         Daniel E. Melchi
                         Georgia Bar No. 501187
                         Attorneys for the Movant

5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005
T: (770) 685-7000
F: (770) 685-7002
E: dmelchi@luederlaw.com